Welch, J.
The defendants, who were executors of the last will and testament of John Chaplin deceased, and also testa mentary guardians of the minor legatees, were directed by *445 the will to put at interest certain moneys of the estate, either by deposit' in a bank, or by loan, “ well secured by mortgage on real estate,” until the youngest legatee should become of age, covering a period of some fourteen years;
The money came to the hands of the executors in three-several parcels, and was loaned by them to one Rogers upon three several mortgages on real estate. These mortgages were sufficient security for the money, except that in one of them there was a mistake in the description of the mortgaged property, which mistake, however, could and would readily have been corrected had it been discovered. Each of these loans ran for one year only. After the maturity of one of the loans, and while the other two still remained undue,, at the request of Rogers, and to accommodate him, the executors released these mortgages and cancelled the mortgage notes, taking from Rogers a new note for the entire sum, which he secured by a mortgage on other real estate, called" in the proceedings the “Hepler mortgage.” The property covered by this latter mortgage was insufficient in value to secure the amount loaned, and was, moreover, subject to-a prior mortgage, a fact which the executors failed to ascertain, having omitted to examine the records for that purpose. Upon discovery of the insufficiency of the Hepler' mortgage, the executors made an arrangement with Rogers, by which they released the same, and again took a new mortgage. This last mortgage was upon Rogers’ undivided half of a certain -mill lot with the mill erected thereon, which was at the time owned and used by Rogers and his brother as partners in the milling business, but tlie title to which stood upon the record as that of tenants in common. The property thus mortgaged was sufficient in value to secure the-loan ; and Rogers himself, as well as the firm of Rogers and brother, was solvent and good for the debt. In taking the mill mortgage, the executors, who were not learned in the law, exercised their best judgment, and acted in good faith, under the advice of counsel. Their counsel was a lawyer in good standing in his profession. He testifies that he had long resided in the town where the mill is situate, and was acquainted *446 with property there, and with the Rogerses, and that he advised the executors that the security was good. He also testifies that the executors were “ very cautious, and took a great deal of pains to get the very best security.” It is true, that he says his opinion was not asked as to the liability of the prop•erty for debts of the partnership. He probably knew the fact that it was partnership property. If he did not, the executors probably did not, for they were non-residents of the town. The truth seems to be, that the rule of equity which subjects such property to the payment of partnership liabilities, was utterly unknown to the executors, and if known to their attorney did not occur to him at the time.
Subsequently, the firm of Rogers and brother proving to be insolvent, an action was brought by the executors to foreclose the mortgage. To this action the creditors of the firm of Rogers and brother were made parties, and the mill property was by decree of court subjected to the payment of the partnership debts, for which it proved insufficient, and Rogers being insolvent, the mortgage debt was lost.
After bringing their action upon the mortgage the executors were offered, in security of the loan, the note of a third person, which was in fact secured by mortgage (the executors, however, not being informed that it was so secured), on condition that they would release the mortgage upon the mill property. Under the advice of their said attorney they refused this offer. Had they accepted it the debt would have been saved. They refused the offer in good faith, and in the belief that the mill mortgage was good, or at least was better than the security so offered.
In their account filed m the probate court for final settle ment the executors credited themselves with the amount of this loss, being with the interest some $6000. To this item in the account, the legatees, the present plaintiffs in •error, excepted. The exception was overruled by the probate court, and the cause appealed to the common pleas, where a like judgment was entered. To reverse the judgment of the •common pleas a petition in error was prosecuted by the *447 legatees in the district court, and the cause was there reserved for decision here.
The ease presents the single question whether the executors have been guilty of a breach of trust. In other words, have they acted within the scope of their authority, and exercised such prudence, care, and diligence in the management of this fund, as men of ordinary diligence, care, and prudence manifest in like matters of their own. If they have not, then the loss should fall upon them; otherwise it should be borne, as losses generally are, by the owners of the fund.
It is claimed, in the first place, that the executors rendered themselves absolutely liable to account for the fund, by their release of the first three mortgages, which were amply sufficient security, and also by taking the Hepler mortgage without ascertaining the true value of the property or the existence of a prior mortgage upon the property; and that however fully and well they may have discharged their duty in taking the final mortgage upon the mill property, this will not discharge them from their liability.
The answer to this claim, it seems to us, is, that the will prescribes no limits as to the length of time for which any loan should run, but entrusts to the executors a discretion, to loan it for longer or shorter periods, and to collect and reloan it, as they might deem proper. They had a right at any time, either before or after the money became due, to receive payment of it from Rogers, and reloan it to him upon new securities, or, which would seem to be in effect the same thing, to substitute new securities for the old ones. The final loan upon the mill mortgage must, therefore, be looked upon in the light of an original loan. Had the executors made no loan of the money at all, but kept it in their own hands, down to the date of the mill mortgage, surely the loan upon that mortgage, if well and judiciously made, would have discharged them from all loss happening therefrom without their fault; and yet in that case their prior breach of trust, in failing to loan the money at all, would have been at least as great, and as undeniable, as in the present case.
But it is said, even if the mill mortgage is to be considered *448 as an original transaction, that the executors were guilty of a breach of trust in taking it, first, because the mill property was not “ real estate,” and, therefore, not within the scope of their authority; and, secondly, being partnership property, and as such liable primarily to the satisfaction of partnership debts, the security was insufficient, and such as no prudent man would accept.
We are clear in the opinion that the first of these positions is not well taken. Real property, the title to which is vested in the members of a firm, but which is in fact owned and used by the firm as partnership property, though regarded in equity as part of the assets of the concern, and as such subject to some of the incidents of personal property, is nevertheless in law real estate, and can only be mortgaged or conveyed as such. A mortgage upon such property is not a mortgage upon personal property, but upon real estate.
The second position assumed involves more of difficulty. If the executors, at the time of taking the mortgage upon the-mill property, were aware that it was in fact owned and used by the firm as partnership property, and were also aware of the law which holds it liable, like other partnership assets, to-the payment of partnership debts, to the exclusion of the individual debts, of the members of the firm, they were clearly guilty of a breach of trust in taking the mortgage. That they were aware of the fact that the mill property was owned and used as partnership property, they are estopped to deny. This is so, because otherwise they would have been innocent purchasers without notice, and no decree could have been properly rendered against them, and in favor of the partnership creditors, in their action to foreclose the mortgage. That decreeestops them, not only from denying its truth, but also from denying any' fact upon which it necessarily rests. We are bound to assume, therefore, that the executors acted with a knowledge that this was partnership property. It is manifest,, however, that they acted in utter ignorance of the law — dr rather, the rule of equity — by which such property is subjected, as personal assets, to the payment of partnership debts, to the exclusion of liens created thereon by the individual. *449 members of the firm. It is admitted that they acted in good faith, and exercised their best judgment. They followed the-advice of their counsel, a lawyer of large practice and long-experience, and who stood high in his profession. Would it be just, under such circumstances, to hold them accountable-for their ignorance of this recondite, and I might even say,, doubtful principle of law — a principle which, though established as law in Ohio, is said to be denied in some other States ? It never occurred to their counsel to suggest the existence of any such rule of law. How could we expect it would occur to the executors who were unlearned in the law ? The evidence shows that the executors consulted many business persons, as to the propriety and safety of taking the proposed security, yet no one suggested any difficulty or objection on the ground that the mill was partnership property.. In all probability, had the testator himself, or the legatees-themselves, been consulted, under the same circumstances, they would have fallen into the same mistake. Is it just,, then, to hold the executors responsible for this loss? Are they guilty of a breach of trust, a betrayal of the confidence-reposed in them by the testator ? A majority of the court think not. It seems to us that in taking this last mortgage-the executors acted up to the standard observed by men of' -ordinary prudence and sagacity.
As to the refusal of the executors to release the mill mortgage, and take in lieu thereof the promissory note of a third person, secured by mortgage, it is enough to say that they were not informed of the fact that it was so secured, and that in refusing to accede to the offer they followed the advice of their counsel.
A majority of the court are unable to see any error in the judgment of the court of common pleas.

Judgment affirmed.

Scott, C.J., and Day, J., concurred.
White, J., being of opinion that, on the facts of the case^ the judgment ought to be reversed, dissented.